# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:14-CV-234

| | |
|---|---|
| HERBERT W. MARTIN, )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, ACTING )<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>**Defendant.** )<br>) | **ORDER** |

**BEFORE THE COURT** are the parties' cross motions for summary judgment. (Doc. 10, 12). Claimant has filed a supplemental memorandum (Doc. 15), to which the Commissioner has responded (Doc. 17).

## I.  PROCEDURAL HISTORY

On April 15, 2012, Claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of March 19, 2012. The claim was denied initially and upon reconsideration. Thereafter, the claimant appeared with counsel at a hearing in front of Administrative Law Judge Jane A. Crawford ("ALJ").

The ALJ decided in favor of the Commissioner. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the onset date. (Tr. 18). At step two, the ALJ found that the Claimant had the following severe impairments: (1) L5-S1 degenerative disc disease; (2) restless leg syndrome; (3) obesity; and (4) major depressive disorder. The ALJ found that none of Claimant's impairments, nor any combination thereof, met or equaled the Listings'

1

requirements. (Tr. 21-23). The ALJ found that the Claimant had the following residual functional capacity ("RFC") to perform sedentary work, except:

> he is limited to jobs that will allow him to change position from sitting to standing for a couple of minutes, a couple of times per hour; he is limited to only occasional[] climbing of ramps and stairs; he is limited to only occasional balancing, stooping, kneeling, crawling, and crouching; He is restricted from working at unprotected heights or around dangerous machinery; and he is further limited to jobs performing the simple, routine tasks of unskilled work in a position[] that does not require[] adherence to strict production quotas.

(Tr. 23). At step four, the ALJ found that Claimant could not perform past relevant work; however, at step five the ALJ found that jobs existed in significant numbers in the national economy that Claimant could perform. (Tr. 31). Accordingly, the ALJ found Claimant not disabled. (Tr. 33). The Appeals Council denied Claimant's request for review making the ALJ's decision the final decision on review in the instant case. (Tr. 1).

The Court adopts the lengthy recitation of the testimony and medical evidence made in the ALJ's opinion and will discuss such evidence when relevant and necessary.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir. 1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant

2

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456. Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. ANALYSIS

### A. **SSR 96-8 and *Mascio***: Function-by-Function Analysis and Moderate Limitations in Concentration, Persistence, and Pace

Claimant argues in his initial motion for summary judgment and the supplemental filing related to *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) that the ALJ failed to account for his mental limitations when limiting him to simple, routine tasks. In this case, the ALJ found that major depressive disorder was a severe impairment. (Tr. 18). At step two, the ALJ also found that that Martin has moderate restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties maintain concentration, persistence, or pace. (Tr. 22).

#### 1. Pertinent Evidence of Record

The ALJ discussed Claimant's mental limitations at length throughout the opinion. Relevant to the Claimant's argument, the ALJ found that Claimant is limited to "jobs performing the simple, routine tasks of unskilled work in a position[] that does not require[] adherence to strict production quotas." (Tr. 23). The ALJ also found that Claimant should have the ability "to change position from sitting to standing for a couple minutes, a couple of times per hour." (*Id.*). In the ALJ's RFC analysis, she noted that Claimant's "commitment to mental health treatment has been sporadic at best" and that his noncompliance "negatively affected his mental functioning." (Tr.

3

26). The ALJ further noted that Claimant "did not apparently feel the need to pursue mental health treatment, except for the fact that his disability lawyer told him [that] he should." (Tr. 26). The ALJ further noted that Claimant "stopp[ed] and start[ed] his various psychotropic medications on his own volition." (Tr. 26).

The ALJ also specifically discussed Claimant's allegations regarding his inability to focus, finding that "[h]e drives his daughters to and from school on a daily basis, an activity that requires focus and alertness. He watches television. Additionally, in contradiction to his testimony, he was apparently able to do his own yard work, at least until an April 2013 allergy attack." (Tr. 29). Further, Claimant's wife testified that he could manage his personal finances which requires "a certain level of attention." (Tr. 22). Moreover, the ALJ noted that at the hearing Claimant "did not evidence any problems with memory or concentration, and was able to respond in an efficient and appropriate manner to questions posed." (Tr. 22). Claimant's wife further noted that Claimant could "handle stress 'fairly well.'" (Tr. 22). Further, the ALJ specifically noted that "Dr. Finch did not indicate that the claimant had any type of mental impairment, and stated that emotional factors did not contribute to the claimant's symptoms and limitations." (Tr. 30).

A state agency psychologist found that Claimant was moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. 91). However, the psychologist also found that he has the ability to "carry out very short and simple instructions and is able to maintain attention and concentration for two hours at a time for the performance of simple tasks." (Tr. 91). The psychologist further noted that "[b]ased on the evidence in the file cl[aimant] has been found to sustain attention for simple tasks, in a low stress environment." (Tr. 92); *see also* (Tr. 99) ("Claimant would be able to sustain attention and concentration for two hours at a time as required to perform simple tasks, sufficiently to complete an 8 hour day

and a 40 hour week."); (Tr. 104) (finding only mild difficulties in concentration, persistence, or pace). The ALJ gave some weight to the State Agency psychological consultants. (Tr. 31).

The state agency physicians found that he was capable of performing medium work. (Tr. 93, 107).

Claimant's wife, however, did state that she has to "stay on him to perform tasks," (Tr. 69), and Dr. Finch opined that Martin would be off task 15% of a normal workday, (Tr. 500). The VE stated that if a person were off task for this percentage of time then there would be no work to accommodate such a limitation. (Tr. 78).

2. Function-by-Function Analysis

Claimant argues that there was no functional analysis of his non-exertional capacity. SSR 96-8p requires that the ALJ assess the claimant's ability to perform non-exertional functions such as the ability to "understand, carry out, and remember instructions; use judgment in making work-related decisions; [1] respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p.

The Court notes that Claimant was assigned an RFC for sedentary work with additional limitations. "Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p.

In *Mascio,* the Fourth Circuit held that "[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's opinion frustrate meaningful review." 780 F.3d at 636 (4th Cir.2015). However, the Court went on to hold that remand is not always

---
[1] In Claimant's case, these would be "simple work-related decisions." SSR 96-9p.

5

required when an ALJ fails to perform an explicit function-by-function analysis, such as in cases "where the ALJ does not discuss functions that are irrelevant or uncontested." *Id.* at 636.

In this case, it is obvious that the ALJ did not complete a function-by-function analysis, despite writing a lengthy opinion. This is apparent when viewing the Commissioner's response, which argues instead that there was not credible evidence to support limitations in the functional areas. However, the Court is not frustrated in conducting its review of the ALJ's decision because all of the asserted mental limitations occurred as an incident to the Claimant's allegations of disabling pain. The specific arguments Claimant makes are that (1) "the ALJ found Martin has moderate restrictions in activities of daily living but did not address these restrictions in the RFC determination" and (2) "the ALJ . . . found Martin has [mild] difficulties in social functioning but the ALJ did not address these difficulties in the RFC such as his ability to respond appropriately to supervision or co-workers." (Doc. 11, at 9). Of course, these findings are relevant to step two and are different than the work-related mental activities that the ALJ should have addressed in his RFC analysis.

The Court first notes that Dr. Finch found that emotional factors did not contribute to Claimant's limitations. Further, Finch indicated that adverse effects of medication did not cause a need for breaks during the working day. Also, state agency consultants found that Claimant could work in spite of his purported non-exertional limitations and the ALJ credited their analysis in his decision. (Tr. 31); *see Abee v. Colvin*, No. 1:14-CV-76-GCM, 2015 WL 5330452, at *6 (W.D.N.C. Sept. 14, 2015) ("[B]ecause the ALJ based his RFC findings on the function-by-function analyses of the State agency consultant and other psychological examiners, the ALJ's RFC analysis complied with S.S.R. 96–9p.") (citing cases). The records establish that most, if not all, of Claimant's alleged non-exertional functional issues have occurred incident to

his allegations of pain. To the extent there was a conflict in the record, it centered on whether or not Claimant's allegations of pain were credible. This was dealt with at length by the ALJ and the Court finds that it does not have to guess as to how the ALJ came to his decision that the Claimant was limited to sedentary work with additional limitations.

### 3. The ALJ Made a Complete Hypothetical

Claimant also argues that the ALJ did not make a complete hypothetical.

In *Mascio*, the Fourth Circuit held that an ALJ's hypothetical to a vocational expert, which limited the claimant to unskilled work but said nothing about the claimant's mental impairments, was legally insufficient because it failed to properly account for the claimant's moderate limitations in concentration, persistence, or pace. 780 F.3d at 633. The Fourth Circuit stated that an "ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The court noted that "the ability to perform simple tasks is different from the ability to stay on task," and thus merely limiting the hypothetical to simple or unskilled work was insufficient. *Id.* at 638. Remand, however, is not automatically required when an ALJ fails to explicitly account for concentration, persistence, or pace limitations in their hypothetical to the VE. *See id.* For instance, "the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.*

In *Mascio*, remand was necessary because the ALJ provided no explanation at all regarding whether the claimant's limitations in concentration, persistence, or pace affected her RFC. *Id.* Here, the ALJ's lengthy decision is supported by substantial evidence as recounted

7

above. In the decision, the ALJ expressly concluded that "in spite of his mental impairment, with appropriate treatment and medical compliance, he remains able to perform simple, routine tasks in an environment that does not require strict adherence to production quotas." (Tr. 31).

First, the Court references its discussion below with regard to the ALJ's appropriate limited use of Dr. Finch's Statement. Secondly, the ALJ appropriately relied upon the State agency consultants, all of whom found that Claimant's alleged concentration issues would not prohibit him from working in jobs that were unskilled and involved simple or routine tasks. The ALJ further accounted for concentration-related issues by finding that he was not to be in a position that required strict production quotas. The Commissioner appropriately argues that the positional limitations in the RFC allowing for multiples changes of sitting and standing will certainly involve some degree of a break in concentration. (Doc. 13, at 9). Substantial evidence supports the ALJ's finding and the Court will not remand on this issue.

The argument related to "highly individualized" reaction to the demands of work stress is also without merit. *See* SSR 85-15. Claimant does not even attempt to articulate what, if any, additional limitations would be required that were not already accounted for in the RFC. The record reflects and the ALJ found that Claimant's stress relates to his pain and perceived inability to provide for his family. Both Drs. Krisnamurthy and Finch indicated that Claimant could work in a low-stress setting. The ALJ had substantial evidence to conclude that such a setting results from simple, routine, unskilled work without strict quotas.

### B. The testimony from the VE Does Not Directly Conflict with the Dictionary of Occupational Titles

Claimant's second assignment of error is that the ALJ inappropriately relied upon the VE's determination that Claimant could work as a credit checker, food and beverage order clerk, and charge account clerk. Claimant argues that the ALJ made this finding without enquiring of

8

the VE if there were any conflicts between the testimony of the VE and the DOT. Claimant's principle argument is that all of these jobs require a reasoning level of "3" and that this is inconsistent with the RFC's finding that Claimant is limited to simple, unskilled work. Level 3, according to the DOT, requires a person to

> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, Appendix C, Section III. "There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work [are] consistent with a DOT reasoning level of either 2 or 3." *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014); *see also Clontz v. Astrue*, No. 2:12-CV-00013-FDW, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013). Accordingly, the Court finds that this argument has no merit.

### C. Treating Physician

Claimant next argues that the Court failed to appropriately weigh the medical evidence of record. Specifically, the Claimant complains of the ALJ's failure to credit Dr. Finch's opinions.

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion will not be entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other

substantial evidence of record.[2] An ALJ must always give "good reasons" for the weight given or not given to a treating physician's opinions. § 404.1527(c)(2).

If a treating physician's opinion is not conclusive, the opinion must be evaluated and weighed considering (1) whether the physician has examined the claimant; (2) the length of the treatment relationship and frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c).

The Court notes that Claimant appears to be arguing that Dr. Finch's opinion was rejected in *toto*, but this is not the case. The ALJ gave his opinion "little weight." (Tr. 30).

Dr. Finch's Medical Source Statement indicates the following: Claimant has been diagnosed with lower back pain; his prognosis is fair; his symptoms are low back pain, stiffness, tingling and numbness in legs; and he is being treated with chronic morphine, muscle relaxers, and Cymbalta which he tolerates well. (Tr. 497). It further indicates that these impairments are expected to last at least twelve months; that emotional factors do not contribute to these issues; that no psychological conditions affect Claimant's physical condition; that Claimant can walk a city block without rest or severe pain; that Claimant can only sit/stand for a period of twenty minutes without need for adjustment; that Claimant can sit for less than two hours in an eight hour workday; that Claimant can stand/walk for less than two hours in an eight hour workday; and that Claimant needs a job that permits shifting positions. The Statement continues, asserting that Claimant needs periods of walking around during the work day, and that he must do so every

---

[2] If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996); *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (holding that a treating physician's opinion need not be afforded controlling weight).

twenty minutes for a period of five minutes; that Claimant needs unscheduled breaks during the work day and these will occur hourly for a period of ten minutes; Claimant needs his legs elevated six inches when sitting for prolonged periods; and that Claimant does not need a cane. Dr. Finch indicated that Claimant could lift less than ten pounds occasionally, and ten pounds rarely; that he could rarely twist, climb stairs, and climb ladders, but could never stoop or crouch/squat. Finally, the Statement indicates that Claimant would be off task fifteen percent of the time during a typical workday; that Claimant could tolerate low stress work; Claimant would have good and bad days; and that Claimant would be expected to be absent more than four days per month because of his impairments. (Tr. 500).

The RFC given is partially consistent with the limitations indicated by Dr. Finch in his Physical Medical Source Statement. For example, the RFC indicates that Claimant is "limited to jobs that will allow him to change position from sitting to standing for a couple of minutes, a couple of times per hour." (Tr. 23). Dr. Finch indicated that Claimant had positional limitations by stating he could only sit or stand for a period of twenty minutes before needing to adjust. (Tr. 498). Further, the RFC's limitation to jobs without "strict production quotas" accounts for Dr. Finch's opinion that Claimant can work in a low stress environment. (Tr. 500).

The ALJ decided to give Dr. Finch's statement "little weight" for the following reasons: (1) he is only a primary care provider and the specialists' opinions differ; (2) Dr. Finch's extreme limitations are inconsistent with the objective findings from Dr. D'Amore and Mr. Kraak's exams; and (3) Dr. Finch's statement is inconsistent with his own objective findings in the record. Further, the ALJ concluded that Dr. Finch relied heavily on the subjective allegations of the Claimant despite having good reasons to question his credibility. (Tr. 30).

The Claimant addressed each contention and the Court will do the same. First, whether a practitioner is a specialist is an expressly enumerated factor set forth in § 404.1527(c). Accordingly, it was reasonable and appropriate to discount Dr. Finch's Statement when it was inconsistent with the findings of the specialists in this case. The ALJ found that the specialists' records establish that "while the claimant's impairment was severe, with appropriate treatment and therapy, he could be quite functional." (Tr. 30). The fact that each specialist only recommended conservative treatment options is something that the Fourth Circuit "has long held . . . appropriate for the ALJ to consider . . . in judging the credibility of the plaintiff." *Dunn v. Colvin*, 607 F. App'x 264, 273 (4th Cir. 2015). It stands to reason that the ALJ had substantial evidence to assign less weight to Finch's opinion when other medical providers only recommended conservative treatment.

Claimant attempts to side-step this issue by stating that "neither of these medical providers provided opinions as to Martin's abilities to engage in basic work activities of standing, walking, lifting, carrying, etc." (Doc. 11, at 19).

On January 3, 2012, Claimant saw Dr. D'Amore. (Tr. 331). D'Amore noted that Claimant was "alert and oriented x3"; "cognitively intact"; had "an athletic and strong complexion"; was "able to walk on his heels and the balls of his feet"; and "ambulated without any assistive devices." (Tr. 331). Further, D'Amore indicated that the lumbar paraspinal muscles were "tight", that the flexion, extension, and rotation of the lumbar spine was within normal limits, and the strength of upper and lower extremities was 5/5. (Tr. 331). Further, "[m]otor and sensory function were grossly intact." (Tr. 331). D'Amore indicated that she discussed "conservative" treatment such as core strengthening exercise like yoga or Pilates. (Tr.

12

331). Only in the future would Dr. D'Amore consider physical therapy. (Tr. 331). Claimant failed to follow up with this specialist.

Claimant was also referred to the Carolina Spine and Nuerology Center and he saw Mr. Kraak, a physician's assistant, there on April 20, 2012. (Tr. 344). The intake form noted Claimant's subjective allegations of pain and difficulties, (Tr. 344-45, "History of Present Illness"), but the physical exam was unremarkable. For example, under musculoskeletal, it was noted that Claimant had "a stable, non-tender, normal range of motion without obvious deformity was demonstrated in bilateral hips, knees and ankles. Good muscle tone with no atrophy or fasciculations." (Tr. 346). Claimant's gait was non-antalgic and he could heel, toe, and tandem walk without ataxia or signs of weakness. (Tr. 346). Furthermore, Claimant had 5/5 bilaterally symmetric strength in his quadriceps, hamstrings, hip adductors, extensors and ankle dorsiflexors, ankle evertors, invertors, and EHL's in the lower extremities. (Tr. 346). Regarding the spine, sagittal and coronal alignment was within normal limits and there were no visible or palpable defect consistent with dislocation or subluxation. (Tr. 346). It was noted that the "[c]ervical range of motion is within normal limits on rotation, flexion, and extension. Trunk motion is 90 degrees forward flexion although he lists to the right in doing so. 20 degrees back extension, 30 degrees side bending right and left with forward flexion most painful." (Tr. 346). Finally, when palpating the spine, there was no spasm; no tenderness over the lumbar soft tissues or upper or mid lumbar spine; there was tenderness at L5-S1 level; and there was no tenderness over the cervical or thoracic spinous processes or paraspinal muscles. (Tr. 346). Upon review of the radiographs, it was noted that there is advanced degenerative changes with marked disc space narrowing at the L5-S1 level but the other spaces were well preserved. (Tr. 347). Under the "discussion/recommendations" section, the provider indicated that his primary problem is

13

advanced degenerative disc disease but that the leg symptoms do not match up with this issue, but that perhaps the L5 nerve root was irritated. (Tr. 347). The treatment note indicated that "[c]ontinued conservative management is recommended through Dr. Finch or referral back to a pain clinic for consideration of further injection therapies." (Tr. 347). Kraak also discussed with Claimant that he needed to keep his weight under control and to start a home exercise program for core body strengthening. (Tr. 347).

The Court finds that the treatment notes more than amply demonstrate that these providers discussed the work-related limitations that Claimant claims were omitted.

Finally, the Court has reviewed Claimant's argument related to Dr. Finch's records. The ALJ noted that there were instances in Dr. Finch's records where Claimant did not appear to exhibit the disabling, constant back pain that is alleged in the instant case. (Tr. 30, highlighting instances where Claimant appeared in no apparent distress, where he wanted to reduce reliance on pain medication, where he was comfortable, and his gait was noted to be normal). Claimant noted that there were instances where complaint of back or an assessment of back pain was noted. (Tr. 363-65, Tr. 466, 475-76). The Court notes that these records, at the least, can support a finding that the back pain was not as constant as alleged. Further, the ALJ also appropriately noted that recent medical records from Dr. Finch were for other ailments unrelated to back pain. Finally, the ALJ appropriately found that there were good reasons to question Claimant's credibility regarding his allegations involving the severity of his pain, as recounted below.

Accordingly, the Court finds that the ALJ had substantial evidence to give Dr. Finch's Statement "little weight."

      D.    **<u>Credibility</u>**

Claimant argues that the ALJ "summarily concluded 'the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible for the reasons explained in the decision.'" (Doc. 11, at 20).

To state that the ALJ summarily concluded much of anything is to ignore the length and thoroughness of the ALJ's opinion. The Court notes that almost every single paragraph after the initial finding of lack of credibility either directly addresses Claimant's credibility or directly supports the ALJ's finding of lack of credibility because "treatment notes do not reflect his condition to be as severe as he has portrayed in his testimony." (Tr. 27). Rather than repeat the detailed analysis of the ALJ, the Court will remark on some of the specific points made by Claimant. The Court reiterates the fact that Claimant's testimony involving the degree of pain he alleges to have experienced was not considered wholly credible because specialists in the field only recommended conservative treatment. The ALJ's decision to discount Plaintiff's credibility, in part, because he only required conservative treatment, is supported by substantial evidence. *Dunn*, 607 F. App'x at 273, *Williamson v. Colvin*, No. CA 8:12-2887-JFA-JDA, 2014 WL 1094404, at *19 (D.S.C. Mar. 18, 2014) (fact that Claimant only received conservative treatment in regard to his degenerative disc disease is relevant in determining credibility of allegations of disability). Moreover, the ALJ appropriately noted the fact that the Claimant allegations that he had constant, extreme pain was "implausible, particularly in light of the relatively benign objective findings in the record." (Tr. 27).

First, Claimant argues that the ALJ inappropriately referenced the fact that his attorney advised him to seek mental health treatment and inappropriately concluded that he failed to comply with his mental health treatment. Claimant gives no authority that undermines the proposition that the ALJ made; namely, a person's credibility may be questioned when the first

15

time he or she sought medical treatment was on advice of counsel in the context of a social security claim. Claimant argues that the ALJ should have considered the fact that he could not have complied with the mental health treatment because of financial difficulties. However, the very record Plaintiff cites indicates that he was not taking his medications according to prescription. (Tr. 457). Subsequent records show that when Claimant utilized his medication that he had a positive improvement; namely, that he experienced an increase in energy and decrease in pain. (Tr. 461). The Claimant testified that he no longer received mental health treatment from Family Preservation because "they were basically doing the same thing" as Dr. Finch. (Tr. 25).[3] Accordingly, the ALJ's credibility determination is well-supported and the Court will not reweigh this evidence.

Second, Claimant contends that the ALJ did not mention how Claimant's medication affected his RFC. (Doc. 11, at 22). The ALJ did, in fact, directly address this point when stating that "[a]lthough the claimant testified he spends as much as eight hours in a day in bed because of pain and that his medications make him drowsy and leave him unable to focus . . . he has also admitted engaging in activities that are inconsistent with his assertion that he is totally disabled" such as driving his daughters to and from school and doing yard work. (Tr. 29). Further, recent records indicate that the medications used were working correctly. (Tr. 468, "current lineup is working . . . giving more energy, able to walk more."); (Tr. 470, "doing pretty well currently, advised to inc[rease] exercise with goal of 210"). The same medications that Claimant used were part of the conservative approach advocated by the specialist providers. (*See* Tr. 331, 347).

---

[3] He also stated that there were authorization issues regarding his insurance (Tr. 64); but in any event there is substantial evidence to support the assertion that Claimant was satisfied with only receiving treatment in the form of prescriptions supplied by his family practitioner.

16

Finally, the same medications Claimant complains of, his treating physician states he "tolerates well" and do not cause him to take unscheduled breaks. (Tr. 497-98).

In Claimant's *Mascio* supplemental filing, he argues that the ALJ inappropriately extrapolated from the above activities that he was able to work a full work week. Of course, this statement *in isolation* may be inappropriate as a basis on which to conclude that Claimant testimony is wholly incredible. However, it is apparent that this was a single factor among many that the ALJ considered and the Court will not remand on this basis. *Del Vecchio v. Colvin*, No. 1:14CV116, 2015 WL 5023857, at *7 (W.D.N.C. Aug. 25, 2015) ("[I]solated instances by themselves cannot support a finding that claimant is not disabled but may inform the credibility analysis when considered with other relevant evidence.").

Finally, Claimant rehashes his argument regarding the weight given to the medical evidence. The Court will not repeat its analysis above. The ALJ found the Claimant partially credible, noting that "the claimant's testimony was credible to the extent he can no longer perform his previous work as a police officer, which would require him to function unimpaired by any medication in a physically demanding job." (Tr. 29). Further, the Court references the multitude of instances that the ALJ cites where Claimant reported to providers for other issues and there was no mention of debilitating back pain. (Tr. 28-29).

The Court finds that the ALJ had substantial evidence to discredit the Claimant's testimony and it is not the Court's position on appeal to reweigh the evidence or to make its own findings regarding credibility.

    **E.**    **Remaining *Mascio* Arguments**

Many of Claimant's "*Mascio*" arguments simply expand upon and elaborate on arguments already raised in the original motion for summary judgment.[4] Accordingly, they have been taken care of above.

The ALJ did not use the inappropriate boilerplate mentioned in *Mascio*, accordingly the Court will not remand on that basis.

Claimant summarily argues that the Court should remand because the ALJ did not discuss in detail the conflicts between the state agency medical consultants. However, the critical downfall to Claimant's argument is that the ALJ *added* additional limitations not present in their reports and therefore any error inured to his benefit. Given that any purported error inured to his benefit, it is by definition harmless.

**IT IS, THEREFORE, ORDERED THAT**

(1) Claimant's Motion for Summary Judgment is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment is **GRANTED**;

(3) The final decision of the Commissioner is **AFFIRMED**; and

(4) The Clerk is directed to close the case.

Signed: December 16, 2015

Richard L. Voorhees
United States District Judge

---

[4] To the extent that Claimant has attempted to use his motion for supplemental filing to address issues not raised in the original motion, the Court finds that he has waived said argument. *Watson v. Colvin*, No. 14-2093, 2015 WL 5236611, at *1 (4th Cir. Sept. 9, 2015).